No. 49,696

THOMAS E. BUTLER, *Appellant,* v. WESTGATE STATE BANK, *Appellee, Cross-Appellant.*

(602 P.2d 1276)

Opinion filed December 1, 1979.

*David L. McLane,* of Pittsburg, argued the cause and was on the brief for the appellant.

*Eileen Hiney,* of McDowell, Rice & Smith, of Kansas City, argued the cause and was on the brief for the appellee, cross-appellant.

*Donald F. Hoffman,* of Hays, was on the brief *amicus curiae* for Kansas Trial Lawyers Association.

The opinion of the court was delivered by

HERD, J.: This is an action brought by Thomas E. Butler against Westgate State Bank for damages arising out of breach of an alleged contract to make a loan. At trial, a jury awarded Butler $47,600, $40,000 of which was specified for lost profits. In response to the bank's post-trial motion, the trial court set aside the jury's award of $40,000, allowing the $7,600 judgment for plaintiff's out of pocket expenses. Plaintiff appealed to the Court of Appeals from the trial court's elimination of the $40,000. Defendant cross-appealed from the judgment for $7,600. The Court of Appeals reinstated the award for lost profits, relying upon this court's decision in *Vickers v. Wichita State University,* 213 Kan. 614, 518 P.2d 512 (1974). The court, however, found Butler was not entitled to the $7,600. *Butler v. Westgate State Bank,* 3 Kan. App. 2d 403, 596 P.2d 156 (1979). Westgate State Bank petitioned this court for review of the Court of Appeals decision.

A complete statement of the facts is not necessary as it is adequately reported in the Court of Appeals opinion. Briefly, plaintiff contacted Westgate State Bank to obtain a loan of $30,000 in order to buy the Kansas City area franchise of a telephone directories business, which advertised the businesses of local merchants. Plaintiff's available assets were considered by the bank, including his future inheritance from his late father's estate. The bank's representative assured Butler the loan was approved and there would be no problem obtaining the money. Most of the details of the loan application were handled over the telephone, as the plaintiff was in Texas closing a franchise purchase. When Butler returned to Kansas City, he was informed the bank was turning down the loan because it could not be certain when his father's estate would be settled. Plaintiff sued the bank and this appeal ensued.

The sole question presented to this court is whether the trial court erred in entering judgment notwithstanding the verdict, setting aside the jury's award of $40,000 as damages for loss of business profits. The bank contends there is no substantial competent evidence to support such an award.

The Court of Appeals relied heavily upon this court's opinion in *Vickers v. Wichita State University,* 213 Kan. 614. In that case, television station KTVH in Wichita had initially contracted with defendants Missouri Valley Conference for the televising of conference basketball games. KTVH assigned those rights to plaintiff Vickers' production company. The agreement covered 9 or 10 games for each of the 1969-70, 1970-71, and 1971-72 seasons. Lengthy negotiations were held regarding the terms of the contract; however, the parties were unable to reach agreement. Defendants contacted another production company, whose president accepted the contract. Vickers brought an action for breach of contract and based his claim for damages on loss of profits.

This court found the trial court erred in limiting the evidence of future profits to a showing of past profits, and stated:

"This court follows the general rule that loss of profits resulting from a breach of contract may be recovered as damages when such profits are proved with reasonable certainty, and when they may reasonably be considered to have been within the contemplation of the parties. [Citations omitted.] Recovery for loss of profits caused by a breach of contract depends upon the facts and circumstances of each particular case." 213 Kan. at 618.

"Absolute certainty in proving loss of future profits is not required. . . . It is

the responsibility of a district court to see that speculative and problematical evidence does not reach the jury." 213 Kan. at 620.

The court imposed the rule that profits must be determined with "reasonable certainty." No specific guidelines were provided to aid in a proper showing of lost profits. The court stated only that the evidence presented be "the best available proof as to the amount of loss that the particular situation admits." 213 Kan. at 620.

The sole evidence of lost profits was the testimony of George Schuler, the proposed seller of the franchise. He made a comparison between the Kansas City area and two areas he believed were similar in Texas. It should be noted that at no time did he personally manage or supervise the sales of telephone directories in the Kansas City area. He bought the area franchise from Better Business Pages (BBP), and then decided to discontinue the franchise in that area. In addition, it was noted in the testimony that plaintiff Butler had worked only as a field manager of sales operations for BBP in Kansas City and had no experience in managing the business.

Schuler stated that when he bought the franchise from BBP, he was informed of the profit, gross sales, accounts receivable, and the bad debts and production costs incurred while under the former company's operation. He did not, however, discuss those financial statistics. He relied instead upon his comparison between the areas in Kansas City and the areas in Texas.

Schuler compared the Clay-Platte area to the Hunt County area covering Greenville and Commerce, Texas. He stated the population and the number of telephone directories distributed in those two areas were about the same. The Hunt County area had produced a profit of between $20,000 and $25,000 each year for the last six years. Schuler testified the White Rock area in northeast Dallas was similar to Wyandotte County. He testified, however, that he wasn't certain of the exact number of directories the company published there. He admitted his estimate could be incorrect by as much as 15,000 or 20,000 directories. He stated that area was a little larger than the Wyandotte County area. He could not say whether the two areas were similar in the number of residential areas compared to the business and industrial areas. In addition, he had forgotten the comparison of income ratio per household. Schuler stated the yearly profit for one year was

$35,000, the next year was $41,000, and he added those figures would be a little high for the Wyandotte County area.

Testimony indicated the profits of the telephone directory business in the Kansas City area might not have been as high when BBP was in control. Schuler testified the business had been poorly managed before he took over the operation.

We believe the evidence presented by Schuler was far too speculative to comply with the rule that lost profits must be proved with reasonable certainty. As stated earlier, there was no evidence from anyone who had managed the business in the Kansas City area before Schuler bought the business from BBP. BBP had been operating in that area for twelve months prior to Schuler's decision to terminate the Kansas City operation. The business had produced one directory in each of the Clay-Platte and Wyandotte areas. The estimation of profits in the Hunt County region was based upon an average of profits realized over the prior six years. Schuler did not testify as to the number of years the business had been in operation in that area, nor did he testify as to the amount of profit he realized in the first year of operation. That evidence would be helpful in determining plaintiff's possible profits as he launched a new business. Schuler's estimate of the number of directories sold in the White Rock area was, by his own admission, possibly incorrect by as much as 15,000 or 20,000 directories. An error that large could greatly vary one's profit margin for the year.

In *Vickers v. Wichita State University,* 213 Kan. at 619, we cited with approval the case of *States v. Durkin,* 65 Kan. 101, 68 Pac. 1091 (1902), in which we noted a factor to be considered in a showing of lost profits was the future operator's capability in running the business. In the case at bar, testimony shows the business was experiencing losses due to poor management before Schuler took over. His experience and management techniques were evidently an important factor in the success of the business; yet, there was no evidence presented of Butler's capability in running the operation.

After carefully considering the record and the testimony of Schuler, we find the evidence is not sufficient to establish, with reasonable certainty, plaintiff's lost profits. The evidence presented is far too conjectural and speculative to be relied upon. This holding does not in any way change our opinion in *Vickers*

regarding the rule that lost profits may be recovered for new businesses if they can be proved with reasonable certainty. We are, however, in agreement with the trial court that plaintiff is entitled to the jury award of $7,600 for out of pocket expenses.

Accordingly, we reverse the Court of Appeals and affirm the judgment of the trial court.

FROMME, J., not participating.
HOLMES, J., dissenting.